to have the amount paid by him refunded to them. Id. 9,879. There was another sale of this same interest at public auction in 1868. at which sale it was purchased by James M. Smith, Jr. A petition was filed to set aside this sale. The petition was dismissed. 6 Fed. 685.]

---

## Case No. 9,879.

### In re MOTT et al.

[1 N. B. R. (1873) 223 (Quarto. 9).] [1]

District Court, S. D. New York.

BANKRUPTCY—CONTRACT WITH ASSIGNEE—APPLICATION TO HAVE AMOUNT PAID REFUNDED.

Where the general assignee of the bankrupt made certain conveyances of the real estate, the administrators of the grantee made application to have the amount paid on the contract of sale refunded, which was denied for the reasons that the contract of sale was not delivered up to be cancelled, and further that there was a failure to show that the transaction with decedent was made in good faith by the general assignee.

[In the matter of Jacob H. Mott and Jordan Mott, bankrupts.]

G. B. Goldsmith, for petitioners.

BLATCHFORD, District Judge. When the questions in regard to the sales and transfers made to Isaac C. Delaplaine by the general assignee in bankruptcy in these cases were before the circuit court for this district in December, 1863, by adjournment from this court, Mr. Justice Nelson, in his opinion delivered in the matter, said that not only ought the orders of this court of the 28th of February, 1860, for the making of the sales in question, to be set aside, but the conveyances made under those orders by the general assignee to Delaplaine ought to be delivered up and cancelled, and the money paid by him and deposited in this court, amounting to $800, ought to be refunded to him, and the money paid by him to the general assignee and not so deposited amounting to $200, ought to be refunded to him by the general assignee, and that this court had power to make an order to that effect. [Case No. 9,878.] Judge Betts, in disposing of the matter in this court on the decision by the circuit court of the questions adjourned into that court, delivered a written opinion in which, after deciding that the proceedings to obtain the orders of sales were irregular, and that the sales were void, and ought to be set aside, he said: "If the purchase made by Delaplaine from the general assignee was bonâ fide, and in the belief that the power exercised on the occasion was rightly and fairly used by the general assignee in his behalf, it is competent for the court, if necessary, to afford the said Delaplaine relief against the erroneous proceedings, by compelling the restoration to him of the consideration paid by him on such void sale." It appears from the papers on file in these matters that on the 29th of February, 1860, the general as-

signee made conveyances to Delaplaine in pursuance of the sales, the conveyances being of interests of the bankrupts in certain real estate, and received from Delaplaine as the purchase money, $800, being $400 in each case, which sum of $800 was paid into this court, and is still in court, and also received from Delaplaine $200 for his "legal professional services" in the matters, which latter sum he has retained. It also appears from an affidavit made by Delaplaine on the 14th of December, 1860, that after his purchase from the general assignee, he employed a person by the name of Irving to ascertain the market value of the purchased property; that Irving had no authority to offer it for sale, but that having been informed by Irving of an offer he had made of it, he, Delaplaine, expressed his regret, but declared that as the offer had been made he would confirm what Irving had done. It also appears from the files of the court that Irving on the 14th of June, 1860, made a written offer on behalf of Delaplaine to sell for $20,000 what had been conveyed to Delaplaine by the general assignee.

An order was made by this court on the 17th of June, 1864, in pursuance of the decision of Judge Betts, before referred to, decreeing that the sale to Delaplaine was void, and that the orders of sale be revoked and annulled, and that the general assignee proceed in the due course of the administration of the duties of his office, and dispose of the assets of the bankrupts in his hands, and distribute the same according to law. The order made no provision in regard to paying any money back to Delaplaine, probably for the reason that Delaplaine made no application to court for that purpose, and still adhered to his purchase, as evidenced by the fact that he did not offer to deliver up for the purpose of cancellation, the conveyances which had been made to him by the general assignee. Delaplaine having died in July, 1866, his administrators now apply to this court by petition, praying for the refunding to them of the $1,000. But they do not offer to deliver up to be cancelled the conveyances made by the general assignee to Delaplaine; nor do they show that Delaplaine never assumed to dispose of what purported to be conveyed to him; nor do they show that Delaplaine never realized anything from a sale of the interests, or what disposition he made of them; nor do they show, in accordance with a view taken by Judge Betts in his opinion, that the purchase made by Delaplaine was bonâ fide, and in the belief that the power exercised on the occasion was rightly and fairly used by the general assignee in his behalf. The purchase for $800, with a fee of $200 to the general assignee, of what the purchaser less than four months afterwards held for sale at $20,000, would seem pretty conclusively to repel the idea that there could have been any bona fides in the transaction on the part of Delaplaine, or any belief on his part that the

1 [Reprinted by permission.]

general assignee, in parting with the interests sold for $800, was exercising in a right and fair manner the powers of his office, which required him to realize as much as possible for the creditors of the bankrupts. The application, in the shape in which it is now made, is denied.

[NOTE Subsequently this same interest formerly purchased by Isaac C. Delaplaine was sold at public sale, and purchased by James M. Smith, Jr. A petition was filed to set aside this last sale. Petition dismissed. 6 Fed. 685.]

## Case No. 9,880.

### MOTT v. MARIS.

[2 Wash. C. C. 196.] [1]

Circuit Court, D. Pennsylvania. April Term, 1808.

BANKRUPTCY—ACT 1799—PREFERENCES—BOND FOR DUTIES—PAYMENT BY SURETY.

1. The sixty-fifth section of the bankrupt law of the United States, passed the 2d of March, 1799 [1 Stat. 676], does not repeal the provisions of the law of the United States, which give to the surety who pays bonds for duties, a preference over other creditors.

2. The provisions of the bankrupt law except from its general operation, not only the preference of the United States, but also the right of preference for satisfaction of debts due to the United States.

Judgment was agreed to be entered in this case for the plaintiff, subject to the opinion of the court on the following point: Whether a surety on certain custom-house bonds, having discharged the same after the date of the commission of bankruptcy, some of which were due before, and some after the date of the commission; can recover the amount so paid in the present action, and is entitled to a preference over the general creditors, to be first paid out of the effects of the bankrupt [Maris] in the hands of the assignee.

WASHINGTON, Circuit Justice. The only question is, whether plaintiff is entitled, under the sixty-fifth section of the act of March 2d, 1799, to recover against the assignees, the full amount of what he has paid to the United States, as surety for the bankrupt, in the custom-house bonds mentioned in the case. The only difficulty is, whether this section of the law, so far as it respects the preference given to the surety, be or be not repealed, by the general terms of the bankrupt law. It is admitted, that it is not repealed in express terms, although it is certain that the general terms of the law make no discrimination in his favour; and, in some respects, there is an apparent inconsistency between the provisions of the first, and those of the second law, in relation to such preference. On the other hand, it may be said, that the first law went

1 [Originally published from the MSS. of Hon. Bushrod Washington. Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

very far to place the surety, who has discharged the debt, on the pre-eminent ground on which the United States stood, by authorizing him, instead of pursuing his common law remedy against the principal, to bring his action on the bond itself, though given to the United States; thus, in a measure, sheltering him under the high prerogative rights of the United States. It may be contended, that upon the principle admitted in courts of equity, the surety, if first resorted to, and obliged to pay may claim the advantage of all the securities which the creditor possessed against the principal, and which he might have enforced, had a recovery been had, in the first instance, against the principal; and that his situation ought not to be rendered worse, by the election made by the creditor, over whose conduct he had no control. It might further be said, that the sixty-second section of the bankrupt law, does not merely save from the general operations of that law, the preference due to the United States, but the right of preference to satisfaction of the debts due to the United States; that this was a debt due to the United States, entitled to certain privileges; and that, consequently, the bankrupt law never attached either to the right of the United States, or to the debt itself. We feel some doubt whether this be the correct construction of the law; but, as it has been adopted by the supreme court of this state, our respect for the talents of that court, and our wish that as little collision as possible, should take place between the decision of the federal and state tribunals upon the same questions, will induce us also to adopt the same construction. Judge PETERS entirely concurs in that opinion. Though, in the case referred to, the payments were made by the surety before the bankruptcy of his principal, still there is no difference between that and this case, if the right of preference of the surety remains unaffected by the bankrupt law. Judgment for the plaintiff for his full demand.

MOTT (RIDDLE v.). See Case No. 11,810.

## Case No. 9,881.

### MOTT v. RUCKMAN.

[3 Blatchf. 71; [1] 16 Law Rep. 397.]

Circuit Court, S. D. New York. Oct. 10, 1853.

MARITIME LIENS—SUPPLIES—FURNISHED TO MASTER—SHIPPING—CHARTER-PARTY—RECORD—CONVEYANCE.

1. Where the master of a vessel, who was her charterer for a specific term, under a charter-party which provided that he should furnish her with all requisite stores, purchased supplies for her: Held, that the master, and not the owner, was exclusively responsible for the supplies.

[Cited in The Caroline Casey, Case No. 2,-421a.]

1 [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]